UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **CRUMBL LLC**, a Utah Limited Liability Company, **CRUMBL IP, LLC**, a Utah Limited Liability Company, and **CRUMBL FRANCHISING, LLC**, a Utah Limited Liability Company,<br><br>Plaintiffs,<br><br>vs.<br><br>**CRAVE COOKIES, LLC**, a Utah Limited Liability Company, and **CRAVE COOKIES FRANCHISING, LLC**, a Utah Limited Liability Company,<br><br>**Defendants.** | ORDER GRANTING [31] JOINT STIPULATED MOTION FOR ENTRY OF ESI PROTOCOL<br><br>Case No. 2:22-cv-00319-TC-CMR<br><br>Judge Tena Campbell<br><br>Magistrate Judge Cecilia M. Romero |

Before the Court is the Joint Stipulated Motion for Entry of ESI Protocol (ESI Motion) (ECF 31) submitted by Plaintiffs and Defendants. Based on the ESI Motion and for good cause appearing,

**IT IS HEREBY ORDERED** that the ESI Motion is GRANTED. The following stipulated ESI protocol shall hereby govern in this action:

### ESI PROTOCOL

I.   **GENERAL MATTERS**

   1.   The Parties shall take reasonable steps to comply with the protocol set forth herein.[1]

   2.   To the extent reasonably possible, the production of documents shall be conducted

---

[1] All capitalized terms have the meanings set forth in the Definitions section below.

to maximize efficient and quick access to Documents and minimize related discovery costs. The terms of this Stipulation should be construed to ensure the prompt, efficient, and cost-effective exchange of information consistent with the Federal Rules of Civil Procedure, the Local Rules, and any Orders by this Court.

3. Except as specifically limited herein, this Stipulation governs the production of discoverable documents by the parties during the Litigation.

4. This Stipulation shall not enlarge, reduce, or otherwise affect the proper scope of discovery in this Litigation, nor imply that discovery produced under the terms of this Stipulation is properly discoverable, relevant, or admissible in this or in any other litigation. Additionally, this Stipulation does not enlarge, reduce, or otherwise affect the preservation obligations of the Parties.

5. Subject to the Parties' objections and responses to requests for production of documents and subject to the Court's Standard Protective Order, all documents that are responsive to discovery requests and not designated as "privileged" shall be produced in the manner provided herein. Nothing in this Stipulation shall be deemed to limit or modify in any way the terms of the Standard Protective Order governing this Litigation. Nothing in this Stipulation shall be interpreted to require disclosure of materials that a Party contends are not discoverable or are protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, and/or any other privilege that may be applicable. Additionally, nothing in this Stipulation shall be deemed to waive or limit either party's right to object to the production of certain electronically stored information, pursuant to Rule 26(b)(2)(B) of the Federal Rules of Civil Procedure, on the ground that the sources are not reasonably accessible because of undue burden or cost.

6. The Parties agree to promptly alert all other Parties concerning any technical

problems associated with complying with this Stipulation. To the extent compliance with this Stipulation imposes an undue burden with respect to any protocol, source, or Search Term, the Parties shall promptly confer in an effort to resolve the issue. If the Parties are unable to resolve the issue by mutual agreement after such conference, the Party seeking relief may move the Court for relief pursuant to the Federal Rules of Civil Procedure and the Local Rules.

7. Consistent with their obligations under applicable Federal Rules of Civil Procedure and this Court's orders, the Parties will attempt to resolve disputes regarding the issues set forth herein prior to filing a motion with the Court, or otherwise seeking relief. If the Parties are unable to resolve the dispute after a good faith effort, the Parties may apply to the Court for relief pursuant to the governing rules of procedure.

8. The Parties have a common law obligation to take reasonable and proportional steps to preserve discoverable information in the Party's possession, custody, or control.

9. Nothing herein waives the right of any Producing Party to petition the Court for an Order modifying the terms of this ESI Protocol upon sufficient demonstration that compliance with such terms is either (1) unexpectedly or unreasonably burdensome, or (2) impossible. The meet and confer requirements set forth herein and the governing rules of civil procedure apply prior to seeking relief from the Court.

## II. DEFINITIONS

10. "Electronically stored information" or "ESI" shall include all electronic files, documents, data, and information covered under the Federal Rules of Civil Procedure.

11. "Bates Number" means a unique number affixed to each page of a document produced in the Litigation.

12. "Document" shall include both Hard Copy Documents and Electronic Documents as defined herein.

13. "Database" means a collection of related Electronic Data organized (often in rows, columns and tables) in an electronic environment for a particular purpose. Databases often perform various functions, including data analysis, data sorting, and report generation. Microsoft Access and Oracle are common database platforms.

14. "Electronic Document" means Documents existing in electronic form at the time of collection, including but not limited to: email, word processing files (e.g., Microsoft Word), computer presentations (e.g., PowerPoint slides), spreadsheets (e.g., Excel), and image files (e.g., .PDF).

15. "Hard Copy Document" means Documents existing in paper form at the time of collection.

16. "Metadata" means corresponding data about and Electronic Document that resides in the un-viewed area of an Electronic Document and is generally not seen when such a Document is printed (e.g., date created, date sent, author).

17. "Native Format" means the format in which an Electronic Document was created and used (also referred to in terms of "Native Production").

18. "Party" refers to the plaintiff or defendant in this Litigation. "Parties" refers to one or more Party.

19. "Producing Party" shall refer to the Party producing documents and ESI in response to a discovery request propounded by another party.

20. "Receiving Party" shall refer to the party receiving documents and ESI in response

to a discovery request propounded by the Receiving Party.

21. "Search Terms" are words or a combination of words or phrases designed to identify and capture potentially relevant documents. For example, "trademark" is a potential Search Term.

22. "Searching Syntax" refers to logical combinations of Search Terms joined by proximity and Boolean connectors or other syntax to narrow the search for potentially relevant documents. For example, "trademark /10 registration" is a potential Searching Syntax.

### III.     SEARCH AND PRODUCTION OF DOCUMENTS

23. To the extent a Producing Party intends to use Search Terms or Searching Syntax, to limit the volume of Documents or ESI to be reviewed for responsiveness, prior to conducting any such searches or applying other limiters, that Party shall disclose the following to the Receiving Party:

    a) The custodians whose Documents will be searched using Search Terms and/or Searching Syntax; and

    b) An initial list of the Search Terms and/or Searching Syntax the Producing Party intends to use.

24. If the Receiving Party objects to the Search Terms and/or Searching Syntax provided by the Producing Party, the Receiving Party must identify its objections within five (5) business days of receiving the Search Terms and/or Searching Syntax or any objections are waived.

25. Within five (5) business days of receiving any objections to the Search Terms and/or Searching Syntax, the Receiving party and Producing Party shall meet and confer to attempt to reach agreement on the Search Terms and Searching Syntax to be used. If agreement cannot be

reached, the Party objecting to the Search Terms and/or Searching Syntax may thereafter seek relief from the Court.

26. Nothing herein obligates a Producing Party to use Search Terms and Searching Syntax to identify potentially discoverable or responsive ESI.

27. The use of Search Terms and Searching Syntax does not excuse a Party from its normal obligations under the Federal Rules of Civil Procedure to conduct its own diligent search for responsive documents and produce them.

28. Each Party shall bear their own costs for the production of ESI and Hard Copy Documents. In the event, however, that a Party requests additional searches or the production of cumulative or repetitive information or information that otherwise imposes an undue burden or expense, the Producing Party may object. Upon objection, the Parties shall work in good faith to resolve the issue. In the event that the Parties are unable to resolve their differences, the Producing Party may move the Court for an Order shifting the cost of production of additional searches or the production of cumulative or repetitive information or information that otherwise imposes an undue burden or expense to the Receiving Party.

IV. **FORMAT OF DOCUMENTS PRODUCED**

29. **Hard Copy Documents**: Hard copy documents shall be scanned and produced as single-page, TIFF images with an image load file (.OPT file or .LFP file) and a delimited database/metadata load file (.DAT or .CSV). All documents are to be provided with per document searchable text (.TXT) files that contain full text extraction. In the event a document is scanned into TIFF format, the text file should contain that document's OCR text. The documents should be logically unitized (i.e., distinct documents should not be merged into a single record, and a single

document should not be split into multiple records) and should be produced in the order in which they are kept in the usual course of business. The text and image load files should indicate page breaks. The following fields should be included in the load files: BEGDOC#; ENDDOC#; BEGATT#, ENDATT#, as referenced in **Appendix A** contained in a separate file. The parties shall use their best efforts to unitize the Documents correctly.

30. **Electronic Documents**: With the exception of documents identified below, Electronic Documents shall be produced as single-page TIFF images, with not less than 300 dpi resolution. TIFF images may be produced in black & white TIFF format, not grayscale, unless color is necessary to understand the meaning of the document. A Party may request certain documents or categories of documents be produced natively or in color also. All images related to the same document should be contained in the same folder, with a maximum of 1,000 documents per folder. The images shall be accompanied by a load file, *e.g.*, .OPT or .LFP. In addition, Electronic Documents shall be produced with corresponding Metadata, as described in **Appendix A**, in a separate data file.

31. **Native Format**: The production of documents in Native Format is subject to the following protocol: Any document produced in Native Format shall be produced with a Bates-numbered TIFF image slip-sheet stating the document has been produced in native format and noting the document's confidentiality designation (if any). ESI produced in Native Format shall be named per the Bates-number appearing on the corresponding slip-sheet followed by any confidentiality designation (e.g., BATES001234_CONFIDENTIAL.xls).

    a)    **Excel spreadsheets**: The Parties agree to produce Excel spreadsheets in the Native Format, with the exception that any Excel spreadsheet that requires

redaction may be produced in TIFF-format only; a Party may also redact spreadsheets in Native Format by replacing privileged text with the designation "[**REDACTED**]" provided that doing so does not alter any other data in the spreadsheet, e.g., by altering formulas. To the extent that printouts or images of all or part of an Excel spreadsheet were also maintained in static form (e.g., as a PDF or a hard copy in a file), those documents will be produced as static images consistent with the specifications for Hard Copy Documents or Electronic Documents, whichever applies.

b) **PowerPoint slides:** The Parties agree to produce Microsoft PowerPoint slides as both TIFF images and in Native Format.

c) **Miscellaneous Electronic Files**: To the extent that an Electronic File otherwise cannot be reduced to TIFF images, e.g., audio or video files, the file shall be produced in Native Format.

d) **Databases**: Certain types of databases are dynamic in nature and will often contain information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. These files are typically very large and would, if rendered to TIFF images completely, produce thousands of pages that would have little utility to a reviewer without the associated database. The Producing Party may opt to produce relevant and responsive information from databases in an alternate form, such as a report or data table. Alternatively, the Producing Party may opt to produce the data contained within a database in CSV or TXT file format, with a corresponding placeholder TIFF image. To the extent that relevant and

responsive reports or data tables derived from a database were also maintained in static form (e.g. as a PDF or a hard copy in a file), those documents will be produced as static images consistent with the specifications for Hard Copy Documents or Electronic Documents, whichever applies.

32. **Searchable Text**: The Parties agree that they will produce extracted text for correspondingly produced Electronic Documents. All text files contained in the TEXTPATH field in Appendix A must be provided at the document level, provided in the same folder, with corresponding images, and named to correspond to the Production ID. For redacted documents or documents without extractable text, OCR Text will be provided for the non-redacted text. All TIFF, PDF, or image-based filetypes in which text could not be extracted normally through standard ESI processing must be OCR processed prior to each party running search terms.

33. With respect to Hard Copy Documents, the Parties agree to produce OCR Text for Hard-Copy Documents.

34. **Metadata**: For Electronic Documents, the Parties agree to produce the Metadata set forth in **Appendix A** in a .DAT file to the extent such Metadata is available, responsive, not privileged, and is already populated in the Party's normal course.

35. **Footer / Bates number:** Each document image shall contain a footer with a sequentially ascending production number (i.e. Bates or document-control number).

V. **OTHER ISSUES RELATING TO PRODUCTION**

36. The Parties will make reasonable efforts to de-duplicate Electronic Documents globally prior to production in a manner that does not break up document families (such as emails and attachments), but the original ESI shall be preserved. For any document that is de-duplicated,

the Producing Party shall provide metadata fields identifying all custodians possessing the document.

37. Documents may be produced on physical media or by secure electronic transmission, e.g., via FTP. Productions shall be encrypted.

38. The parties hereto also acknowledge that regardless of the producing party's diligence, an inadvertent, accidental or mistaken production of attorney-client privileged or attorney work product materials may occur. In accordance with Utah R. Civ. P. 26(b)(8)(B), the parties agree that if a party produces information that the party claims is privileged or prepared in anticipation of litigation or for trial through mistake, accident, or inadvertence, the producing party may notify any receiving party of the claim and the basis for it. After being notified, the receiving party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. The receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The producing party must preserve the information until the claim is resolved.

Application of the Federal Rules of Civil Procedure

39. This agreement is not intended to function in lieu of Federal Rule 34 or any other applicable Federal Rule of Civil Procedure or Local Civil Rule. The agreements set forth herein are without prejudice to the right of a Requesting Party to request additional searches or additional information about specific ESI if it can demonstrate that material, relevant, and responsive information that is not otherwise cumulative of information already produced can only be found through such additional efforts. The Parties will negotiate in good faith with regard to whether

such additional efforts are reasonably required, and will jointly seek assistance from the Court to resolve such disputes if an agreement cannot be reached.

IT IS SO ORDERED.

DATED this 22 July 2022.

*Cecilia M. Romero*
Magistrate Judge Cecilia M. Romero
United States District Court for the District of Utah

## APPENDIX A

MetaData Fields for Production

| Field Name | Description | Example |
|---|---|---|
| BEGDOC# | The beginning bates number of this document | ABC00000001 |
| ENDDOC# | The last bates number of this document | ABC00000010 |
| BEGATTACH# | The beginning bates number of the document family | ABC00000001 |
| ENDATTACH# | The last bates number of the entire document family | ABC00000027 |
| FROM | Author of the e-mail message | Mary.Smith@hotmail.com |
| TO | Main recipient(s) of the e-mail message, by email address. | JohnDoe@gmail.com |
| CC | Recipient(s) of "Carbon Copies of the e-mail message. | Michael123@yahoo.com |
| BCC | Recipient(s) of "Blind Carbon Copies" of the e-mail message. | helpdesk@omnivere.com |
| SUBJECT | Subject of the e-mail message. | Fw: Urgent |
| DATESENT | Date when the email was sent. The date is formatted in US format: mm/dd/yyyy | 02/24/2007 |
| FILEEXT | File extension of native file. | .msg, .pst, .xls |

| Field Name | Description | Example |
|---|---|---|
| DATECREATED | Date when the file was created. The date is formatted in US format: mm/dd/yyyy | 02/24/2007 |
| DATEMODIFIED | Date when the file was last modified | 03/03/2019 |
| DATERECEIVED | Date message received | 02/24/2007 |
| CONFIDENTIALITY | Confidentiality designation | Confidential; Attorney's Eyes Only |
| TITLE | Title from document metadata | Board_Presentation_Q2 |
| PAGECOUNT | Number of pages | 3 |
| FILENAME | Original filename of native file. Contains subject of e-mail message for e-mail records. | Real estate holdings.xlsx |
| MD5HASH | Unique identifier, similar to a fingerprint, extracted from all files. | D564668821C34200FF3E32C9BFDCCC80 |
| AUTHOR | Author field extracted from the metadata of a non-email document | John Doe |
| NATIVELINK | Path and filename to produced Native file (if any) | Z:\VOL01\NATIVES\ABC00000001.xls |
| TEXTPATH | File path to the Extracted Text/OCR File, which may also be referred to as an OCR Path file | Z:\VOL01\OCR\ABC00000001.txt |

| Field Name | Description | Example |
|---|---|---|
| CUSTODIAN | Name of the Custodian of the File(s) Produced – Last Name, First Name format. | Doe, John |